**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION AT CLEVELAND**

| | |
|---|---|
| **PATRICIA BANUS**, individually, and on behalf of those similarly situated<br>9488 Island Rd<br>North Ridgeville, OH, 44039<br><br>      Plaintiff,<br>  v.<br><br>**WHOLE FOODS MARKET GROUP, INC.**<br>c/o CT Corporation System<br>4400 Easton Commons Way, Suite 125<br>Columbus, OH 43219<br><br>      Defendant. | Case No.<br><br>**CLASS ACTION COMPLAINT FOR DAMAGES PURSUANT TO THE FAIR CREDIT REPORTING ACT, 15 U.S.C. § 1681,** *et seq.* **and OHIO CONSUMER SALES PRACTICES ACT, O.R.C. § 1345.01,** *et seq.;* **COMPLAINT FOR DECLARATORY JUDGMENT; AND COMPLAINT FOR NEGLIGENCE**<br><br>**JURY DEMAND ENDORSED HEREIN** |

  Plaintiff Patricia Banus ("Plaintiff"), through Counsel, for herself and on behalf of all others similarly situations and for her Class Action Complaint against Defendant Whole Foods Market Group, Inc. ("Defendant" or "Whole Foods") states as follows:

**PARTIES, JURISDICTION, AND VENUE**

  1. Plaintiff Patricia Banus is a natural person and at all relevant times has been residing in Lorain County, Ohio.  Plaintiff is, and at all times relevant was, a "consumer" as that term is understood under 15 U.S.C. § 1681a(c).

  2. Plaintiff and all putative Class members are "consumers" as that term is defined by 15 U.S.C. § 1681a(c).  In addition, Plaintiff and all members of the Ohio Subclass are "consumers" or "persons" as those terms are defined in ORC § 1345.01, *et seq.*

  3. Defendant Whole Foods Market Group, Inc. is a corporation incorporated under the laws of the State of Delaware with its principal place of business located at 807 Las Cimas

Parkway, Austin, TX 78746. Whole Foods' primary business is as a retail high-end grocery chain that operates seven stores through the State of Ohio.

4. Whole Foods regularly assembles and/or evaluates consumer credit information for the purpose of furnishing consumer reports to third parties, and uses interstate commerce to prepare and/or furnish the reports. Whole Foods is a "consumer reporting agency" as that term is defined by 15 U.S.C. § 1681a(f). Additionally, Whole Foods is a "supplier" as that term is defined by ORC § 1345.01, *et seq.*

5. Unless otherwise indicated, the use of Whole Foods's name in this Complaint includes all agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers of Whole Foods.

6. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331, as this case alleges a violation of federal law, specifically the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* ("FCRA").

7. This Court has supplemental jurisdiction to hear all state law claims pursuant to 28 U.S.C. § 1367.

8. This Court also has subject matter jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2), because the amount in controversy exceeds $5 million exclusive of interest and costs, there are more than 100 putative Class members, and at least some members of the proposed Class have different citizenship than Whole Foods.

9. Venue in this District is proper pursuant to 28 U.S.C. § 1391(b) and (c), as Plaintiff resides within the District, a substantial portion of the events or omissions giving rise to the claim occurred in this District, and Whole Foods regularly conducts business in this District.

**FACTUAL ALLEGATIONS**

*Whole Foods Permits the PII of Numerous Consumers to be Obtained by Identity Thieves*

10. Whole Foods is a national specialty retailer of natural and organic foods, with approximately four hundred and seventy (470) stores in North America and the United Kingdom. Certain Whole Foods locations also offer taprooms and restaurants. Whole Foods routinely processes consumer transactions through a point-of-sale ("POS") system which captures personally identifiable information, including names, credit card numbers, card expiration dates, and three-digit security codes located on the back of their credit cards (collectively referred to as "PII").

11. On information and belief, Whole Foods uses different POS systems in its tap rooms and restaurants than the POS systems used at its checkout counters.

12. Upon information and belief, sometime in September 2017, Whole Foods discovered the POS systems used in some of its tap rooms and restaurants were the subject of a data breach.

13. Upon information and belief, when Whole Foods discovered this breach, it began conducting an internal investigation, as well as engaged third party forensic experts and law enforcement. As of the filing of this Complaint, that investigation remains ongoing.[1]

14. The fact of the breach was discovered and reported by news organizations as of September 28, 2017.[2]

---

[1] *See* Imani Moise, *Whole Foods Discloses Data Breach*, Fox Business, Sept. 28, 2017, available at: http://www.foxbusiness.com/features/2017/09/28/whole-foods-discloses-data-breach.html.
[2] *See, e.g.*, Jackie Wattles, *Whole Foods Customer Info Likely Targeted by Hackers*, CNN, Sept. 27, 2017, available at: http://money.cnn.com/2017/09/27/technology/business/Whole Foods-databreach/index.html.

15. For Plaintiff, as well as all potential Class members, these news stories were the first time they had been informed by Whole Foods that their information secured by Whole Foods had been compromised.

16. On or about September 24, 2017, Plaintiff purchased goods at the taproom located at Defendant's Rocky River, Ohio location located at 19067 Detroit Avenue, Rocky River, Ohio 44116. Whole Foods processed Plaintiff's consumer transaction at the taproom with its compromised POS System. Thus, Plaintiff was implicated in the data breach.

17. As a result, Plaintiff intends to cancel the card she used to complete the transaction and request a new card – an action she would not have to take had her personal information given to Whole Foods not been compromised.

18. Plaintiff, individually and on behalf of those similarly situated, brings this action to challenge the actions on Whole Foods in the protection and safekeeping of the Plaintiff's and Class members' personal information. Whole Foods's failures to safeguard the consumer PII has caused Plaintiff and Class members damages.

### *Whole Foods' Conduct Violated the Fair Credit Reporting Act (FCRA)*

19. The United States Congress has found the banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence, which is essential to the continued functioning of the banking system. Congress enacted the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* ("FCRA"), to insure fair and accurate credit reporting, promote efficiency in the banking system, and, as most relevant to this Complaint, protect consumer privacy. The FCRA imposes duties on the CRA's to protect consumer's sensitive personal information.

20. The FCRA protects consumers through a tightly wound set of procedural protections from the material risk of harms that otherwise follow from the compromise of a consumer's sensitive personal information. Through these protections, Congress recognized a consumer's substantive right to protection from damage to reputation, shame, mortification, and emotional distress that naturally follows from the compromise of a person's identity.

21. Central to the FCRA's privacy protections are restrictions on consumer reporting agencies, or CRAs. A CRA is a person or entity "which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports."

22. Whole Foods is a "consumer reporting agency" ("CRA") within the cognizance of 15 U.S.C. § 1681a(f) because it utilizes a point-of-sale system in which it obtains, evaluates, and/or assembles a consumer's PII in commercial transactions, and directs that PII to be transmitted through a third-party credit card processing company and, ultimately, to a financial institution, who then authorizes payment from a consumer's account back to Whole Foods.

23. A central duty that the FCRA imposes upon CRAs is the duty to protect the consumer's privacy by guarding against inappropriate disclosure to third parties. 15 U.S.C. § 1681b codifies this duty, and permits a CRA to disclose a consumer's information only for one of a handful of exclusively defined "permissible purposes." To ensure compliance, CRAs must maintain reasonable procedures to ensure that such third-party disclosures are made exclusively for permissible purposes. 15 U.S.C. § 1681e(a).

24. The FCRA defines "consumer report" broadly, as "any written, oral, or other

communication of any information by a CRA bearing on a consumer's credit-worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for (A) credit or insurance to be used primarily for personal, family, or household purposes; (B) employment purposes; or (C) any other purpose authorized under section 1681b of this title." 15 U.S.C. § 1681a(d). Under this broad definition, a consumer's PII qualifies as a "consumer report."

25. On information and belief, Whole Foods accepts consumer payment for its goods via payment cards issued by members of the payment card industry ("PCI"), such as Visa and MasterCard.

26. Some PCI members founded the PCI Security Standards Council, which developed a Data Security Standard ("DSS") applicable to all merchants that store, process, or transmit cardholder data. In 2009, a Visa official remarked that "no compromised entity has yet been found to be in compliance with PCI DSS at the time of a breach."[3]

27. PCI members that allow Whole Foods to process payments through their networks impose several requirements, including the requirement that Whole Foods fully comply with all of the DSS requirements and individual PCI members' requirements as a condition of being able to process transactions through the PCI members' networks.

28. On information and belief, Whole Foods's failure to protect consumer data from a data breach arose in part from its failure to follow the industry accepted PCI standards. Whole Foods's actions in designing, implementing, and using the POS system were thus not commercially reasonable insofar as Whole Foods willfully, or at least negligently, failed to enact

---

[3] Jaikumar Vijayan, *Post-Breach Criticism of PCI Security Standard Misplaced, Via Exec Says*, Computerworld, Mar. 19, 2009, available at: https://www.computerworld.com/article/2531828/security0/post-breach-criticism-of-pci-securitystandard-misplaced--visa-exec-says.html.

reasonable procedures to ensure that the consumer reports accessed through its POS system would only be accessed for a permissible purpose, when in fact they were accessed by data thieves.

29. Defendant failed to properly safeguard the information of Plaintiff and Class members, as required under 15 U.S.C. § 1681e(a). Whole Foods failed to take the necessary precautions required to safeguard and protect Plaintiff and Class members' PII from unauthorized disclosure, as their PII was improperly handled and stored. Therefore, on information and belief, the PII of Plaintiff and Class members was accessed by data thieves and stolen.

### *Whole Foods' Conduct Also Violates the Ohio Consumer Sales Practices Act*

30. On or about September 24, 2017, Plaintiff purchased goods at the taproom located at Defendant's Rocky River, Ohio location located at 19067 Detroit Avenue, Rocky River, Ohio 44116. Whole Foods processed Plaintiff's consumer transaction at the taproom with its compromised POS System. Thus, Plaintiff was implicated in the data breach.

31. Plaintiff and Class members paid Whole Foods not only for the goods purchased, but also for, *inter alia*, the protection of their PII. In so doing, they impliedly relied on Whole Foods's promise to keep their PII safe from unauthorized disclosure.

32. Had Plaintiff and Class members known of Whole Foods's inability to adequately protect PII from unauthorized disclosure, they would have paid substantially less for Whole Foods's goods or would have likely "voted with their feet" by purchasing the same goods from another similar seller.

33. However, because Whole Foods failed to protect Plaintiff and Class members' PII, they did not receive the entirety of the goods they paid for, and correspondingly paid more than they would have otherwise for these goods.

34. Thus, Whole Foods' conduct violates ORC § 1345.02(A) as an unfair or deceptive act in connection with a consumer transaction.

35. Whole Foods' conduct also violates ORC § 1345.02(B)(1), as the subject of the consumer transaction – the sale by credit card – had an offered benefit by Whole Foods – the protection of the consumer's PII would be kept reasonably safe from harm – that it did not have.

### *Whole Foods Breached the Duty of Care It Owed to Its Invitees*

36. Whole Foods routinely engages in commercial transactions in which members of the public, like the Plaintiff and Class members, are invited to its business premises to purchase goods.

37. As Plaintiff and Class Members were invitees of Whole Foods, Whole Foods owed them a duty of care to inspect for and discover unknown dangers, as well as to notify Plaintiff and Class members of the same.

38. Upon information and belief, Whole Foods breached this duty by using a POS system which carried, and continues to carry, an unreasonable risk that consumer PII would be accessed and stolen and this risk was never disclosed to Plaintiff and Class members.

### *Harms Suffered by Plaintiff and Class Members as a Result of the Data Breach*

39. By failing to establish reasonable procedures to safeguard individual consumer's private information, Whole Foods deprived consumers nationwide from a benefit conferred on them by Congress under 15 U.S.C. § 1681e(b), which, now lost, cannot be reclaimed. Similarly,

Whole Foods deprived Ohio consumers of a benefit conferred on them by the Ohio legislature under the Ohio Consumer Sales Practices Act which has been irreparably lost.

40. The harm to Plaintiff and Class members was complete at the time the unauthorized breaches occurred, as the unauthorized disclosure and dissemination of private credit information causes harm in and of itself.

41. Moreover, there is a high likelihood that significant identity theft and fraud has not yet been discovered or reported, as evidenced by the advertisement for sale of consumer PII in "dark web" marketplaces. This will result in ongoing harm to Plaintiff, and members of the Class as data thieves invariably seek to utilize the PII, or seek to re-sell it. Thus, Whole Foods's wrongful disclosure of Plaintiff and Class members' PII placed them in an imminent, immediate, and continuing risk of harm for identity theft and identity fraud.

42. Plaintiff and Class members have additionally been harmed as they have (1) been forced to take steps to protect against unauthorized disclosures of their PII, (2) incurred, intend to incur, and/or considered incurring the cost of obtaining replacement credit cards, and (3) overpaid for Whole Foods's goods insofar as a portion of the purchase price was premised on Whole Foods's implied promise to maintain the security and privacy of Plaintiff and Class Members' PII.

43. Plaintiff and Class members have been obligated to retain an attorney to prosecute this case, and are entitled to an award of reasonable attorney's fees and costs.

## CLASS ALLEGATIONS

44. Plaintiff brings this action on behalf of a nationwide class of all similarly situated individuals ("Class"), defined as:

> All persons in the United States from whom Whole Foods stored private, personal information that was released as a result of the Whole Foods data breach disclosed in September 2017.
>
> Excluded from the Class are: (1) Defendant, Defendant's agents, subsidiaries, parents, successors, predecessors, and any entity in which Defendant or its parents have a controlling interest, and those entities' current and former employees, officers, and directors; (2) the Judge to whom this case is assigned and the Judge's immediate family; (3) any person who executes and files a timely request for exclusion from the Class; (4) any persons who have had their claims in this matter finally adjudicated and/or otherwise released; and (5) the legal representatives, successors and assigns of any such excluded person.

45. Plaintiff also brings this action on behalf of a subclass of all similarly situated individuals in Ohio ("Subclass"), defined as:

> All persons in the State of Ohio from whom Whole Foods stored private, personal information that was released as a result of the Whole Foods data breach disclosed in September 2017.
>
> Excluded from the Subclass are: (1) Defendant, Defendant's agents, subsidiaries, parents, successors, predecessors, and any entity in which Defendant or its parents have a controlling interest, and those entities' current and former employees, officers, and directors; (2) the Judge to whom this case is assigned and the Judge's immediate family; (3) any person who executes and files a timely request for exclusion from the Subclass; (4) any persons who have had their claims in this matter finally adjudicated and/or otherwise released; and (5) the legal representatives, successors and assigns of any such excluded person.

46. At this time the Plaintiff does not know the size of the Class because the information is exclusively in the possession of the Defendant, but Plaintiff believes that the potential number of Class members are so numerous that joinder would be impracticable. It has been reported that 120 Whole Foods locations in 34 states are impacted in the data breach. The number of Class members can be determined through discovery.

47. All members of the Class have been subject to and affected by a uniform course of conduct in that all Class members' personal information was compromised during the data breach. These are questions of law and fact common to the proposed Class that predominate

over any individual questions. The questions common to all Class members include, but are not limited to:

    a.  Whether Whole Foods had implemented reasonable procedures to ensure that all third parties accessed Plaintiff's and Class members' private credit information for a permissible purpose;

    b.  Whether Whole Foods's actions violate ORC 1345.02(A) or ORC 1345.02(b)(1) with respect to Plaintiff and Subclass members;

    c.  Whether Plaintiff and Class members suffered damages as a result of Whole Foods's failure to comply with FCRA and the OCSPA based on the improper dissemination of their credit information as a result of the data breach;

    d.  Whether Plaintiff and Class members are entitled to statutory damages; and

    f.  Whether Plaintiff and Class members are entitled to punitive damages.

48. Plaintiff's claims are typical of the Class as Plaintiff's PII was compromised during the data breach. All claims are based on the same legal and factual issues.

49. Plaintiff will adequately represent the interests of the Class and does not have an adverse interest to the Class. If individual Class members prosecuted separate actions it may create a risk of inconsistent or varying judgments that would establish incompatible standards of conduct. A class action is the superior method for the quick and efficient adjudication of this controversy. Plaintiff's counsel has experience litigation consumer class actions.

50. Further, under Fed. R. Civ. Pro. 23(a), Defendant acted on grounds generally applicable to the proposed Class, making appropriate final injunctive relief with respect to the proposed Class as a whole.

51. Based on the actions of Defendant, Plaintiff seeks recovery for the claims alleged, *infra*, summarized as follows:

| **COUNT**  **STATUTE VIOLATED** | **SUMMARY OF CLAIM AND VIOLATIONS** |
|---|---|
| **COUNT ONE**  15 U.S.C. § 1681, *et seq.*  *FCRA* | Defendant's compromise of Plaintiff's personal information that was discovered in September 2017 by Defendant violates 15 U.S.C. § 1681e(a). |
| **COUNT TWO**  8 U.S.C. § 2201(a), *et seq.*  Declaratory Judgment Act | Plaintiff and Class members are entitled to a declaration that Whole Foods's conduct failed to meet the PCI DSS standards. |
| **COUNT THREE**  O.R.C. § 1345.01, *et seq.*  *Ohio Consumer Sales Practices Act* | Defendant's compromise of Plaintiff's personal information is a deceptive act and practice in the consumer transaction, and Defendant also failed to offer a benefit of the consumer transaction to the Consumer. |
| **COUNT FOUR**  NEGLIGENCE | Whole Foods negligently breached its duty of care to its business invitees by failing to uncover and remedy the known risks which led to the data breach, thereby leading to the dissemination of Plaintiff and Subclass members' PII. |

**COUNT ONE: VIOLATION OF 15 U.S.C. § 1681, *et al*.**

52. Plaintiff restates all allegations contained in Paragraphs 1 through 51 as if fully rewritten herein.

53. This Count is brought on behalf of the nationwide Class.

54. Based upon Whole Foods's failure to have reasonable procedures in place as required by 15 U.S.C. § 1681e(a), Plaintiff's PII was compromised.

55. As a result of each and every willful violation of FCRA, Plaintiff and Class members are entitled to: actual damages, pursuant to 15 U.S.C. § 1681n(a)(1); statutory damages, pursuant to 15 U.S.C. § 1681n(a)(1); punitive damages, as this Court may allow, pursuant to 15 U.S.C. § 1681n(a)(2); and reasonable attorneys' fees and costs pursuant to 15 U.S.C. § 1681n(a)(3).

56. As a result of each and every negligent non-compliance of the FCRA, Plaintiff and Class members are also entitled to actual damages, pursuant to 15 U.S.C. § 1681o(a)(1); and reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1681o(a)(2) from Defendant.

## COUNT TWO: DECLARATORY JUDGMENT

57. Plaintiff restates all allegations contained in Paragraphs 1 through 517 as if fully rewritten herein.

58. At all relevant times herein there was in effect the Declaratory Judgment Act ("DJA"), 8 U.S.C. § 2201(a), which states, in relevant part:

> In a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such. 28 U.S.C. § 2201(a).

59. Plaintiff and Class members seek an order declaring that Whole Foods's data security procedures failed to meet the PCI DSS standards, which led to the exposure of Plaintiff and Class members' PII in the data breach.

60. The controversy presented in this case is definite and concrete, and affects the adverse legal interests of the parties. As a result of the data breach and the release of Plaintiff's and Class members' private personal information, Plaintiff and Class members are at a great risk of having that personal information used by unauthorized individuals.

61. There is an actual controversy between the parties of sufficient immediacy and reality to warrant the issuance of a declaratory judgment because Whole Foods, on information and belief, is not in compliance with the PCI DSS standards which would have better safeguarded Plaintiff and Class members' PII from unauthorized disclosure, both now and on an ongoing basis. Consequently, Plaintiff and Class members have been, and will continue to be, caused significant harm.

62. There are no disputed legal and factual issues that the Court would have to resolve in granting Plaintiff's and Class members' request for declaratory relief, as this issue does not affect the merits of Plaintiff's and Class members' claims against Defendant.

63. Based on the foregoing facts, Plaintiff and Class members are entitled to a declaration that Whole Foods's conduct in permitting the data breach failed to meet the PCI DSS standards.

## COUNT THREE: VIOLATION OF O.R.C. § 1345.01, *et seq.*

64. Plaintiff restates all allegations contained in Paragraphs 1 through 51 as if fully rewritten herein.

65. This Count is brought on behalf of the Ohio Subclass.

66. Plaintiff and the putative Subclass are individually "consumers" within the meaning of O.R.C. § 1345.01(D).

67. Whole Foods is a "supplier" as that term is defined by ORC § 1345.01(C).

68. The purchase by Plaintiff on September 24, 2017, and any transaction by a putative Subclass member with Whole Foods is a "consumer transaction" as defined by ORC § 1345.01(A), as the transaction involved a sale of an item of goods in which Plaintiff or Subclass members purchased a consumer good from Whole Foods.

69. As detailed above, *supra*, Whole Foods engaged in unfair and unlawful acts and practices by failing to maintain adequate procedures to avoid a data breach and permitting access to consumer reports by data thieves, for whom Whole Foods had no reasonable grounds to believe the data would be used for a proper purchase. Plaintiff and Subclass members relied on Whole Foods's implied promise of data security when providing their PII to Whole Foods to purchase Whole Foods's goods.

70. Whole Foods's conduct violates ORC § 1345.02(A) as an unfair or deceptive act in connection with a consumer transaction.

71. Whole Foods's conduct also violates ORC § 1345.02(B)(1) as the subject of the consumer transaction – the sale by credit card – had an offered benefit by Whole Foods – the protection of the consumer's PII would be kept reasonably safe from harm – that it did not have.

72. Whole Foods engaged in an unfair practice by engaging in conduct that is contrary to public policy, unscrupulous, and caused injury to Plaintiff and Subclass members.

73. As a direct and proximate result of the foregoing, Plaintiff and Subclass members have suffered injuries including, but not limited to actual damages, and in being denied a direct benefit conferred on them by the Ohio legislature.

74. As a result of the violations of Whole Foods, Plaintiff and Subclass members are entitled to an award of actual damages, statutory damages, as well as an award of reasonable attorney's fees.

75. As a result of the violations of Whole Foods, Plaintiff and Subclass members are also entitled to a declaration pursuant to ORC § 1345.01(D) that Whole Foods's conduct in permitting the data breach failed to meet the PCI DSS standards.

## COUNT FOUR: NEGLIGENCE

76. Plaintiff restates all allegations contained in Paragraphs 1 through 51 as if fully rewritten herein.

77. This Count is brought on behalf of the Ohio Subclass.

78. Whole Foods negligently breached its duty of care to its business invitees by failing to uncover and remedy the known risks which led to the data breach, thereby leading to the dissemination of Plaintiff and Subclass members' PII.

79. Additionally, Whole Foods failed to inform Plaintiff and Subclass members of this heightened risk of harm.

80. Plaintiff and Subclass members suffered damages as a result of Whole Foods's breach of its duty of care and are entitled to an award of actual and punitive damages against Whole Foods.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff PATRICIA BANUS, individually and on behalf of the Class, respectfully requests the following relief against Defendant Whole Foods Market Group, Inc.

A) For an award of actual damages against Defendant for all allegations contained in Counts One through Four;

B) For an award of statutory damages pursuant to 15 U.S.C. § 1681n(a)(1) against Defendant for the allegations contained in Count One for each eligible Class member and Plaintiff;

C) For an award of punitive damages against Defendant for the allegations contained in Count One as this Court may allow pursuant to 15 U.S.C. § 1681n(a)(2);

D) For an award of statutory damages against Defendant for the allegations contained in Count Three of at least $500.00 per party to Plaintiff and all eligible Ohio Subclass members;

E) For an award of the costs of litigation and reasonable attorneys' fees pursuant to 15 U.S.C. § 1681n(a)(3) and 15 U.S.C. § 1681(o)(1)(1) against Defendant for

    each incident of negligent noncompliance of FCRA alleged in Count One and alternatively under the CSPA as alleged in Count Three;

F)    For an award of punitive damages in an amount to be determined against the Defendant for the allegations contained in Count Four to Plaintiff and all eligible Ohio Subclass members;

G)    For an order declaring that Whole Foods's conduct in permitting the data breach failed to meet the PCI DSS standards under Count Two or alternatively under Count Three; and

H)    For all other relief this Court may deem just and proper.

    Respectfully Submitted,

*/s/*Brian D. Flick, Esq.
Marc E. Dann (0039425)
Brian D Flick (0081605)
DANNLAW
P.O. Box 6031040
Cleveland, OH  44103
Phone: (216) 373-0539
Facsimile: (216) 373-0536
*notices@dannlaw.com*

Thomas A. Zimmerman, Jr.
*tom@attorneyzim.com*
ZIMMERMAN LAW OFFICES, P.C.
77 W. Washington Street, Suite 1220
Chicago, Illinois 60602
(312) 440-0020 telephone
(312) 440-4180 facsimile
www.attorneyzim.com
*Pro Hac Vice Application to Be Submitted*

*Counsel for the Plaintiff and the Class*

## JURY DEMAND

Plaintiff hereby requests a trial by jury on all issues.

*/s/*Brian D. Flick, Esq.
Marc E. Dann (0039425)
Brian D Flick (0081605)
DANNLAW
*Attorneys for Plaintiff and the Class*